UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER MARIE MAYNARD,

                      Plaintiff,

             v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**17-CV-6473F**
(**consent**)

APPEARANCES:              LAW OFFICES OF KENNETH R. HILLER, PLLC
                                 Attorneys for Plaintiff
                                 KENNETH R. HILLER, and
                                 MARY ELLEN GILL, of Counsel
                                 6000 North Bailey Avenue
                                 Suite 1A
                                 Amherst, New York 14226

                                 JAMES P. KENNEDY, JR.
                                 UNITED STATES ATTORNEY
                                 Attorney for Defendant
                                 Federal Centre
                                 138 Delaware Avenue
                                 Buffalo, New York 14202
                                       and
                                 KATHRYN L. SMITH
                                 Assistant United States Attorney, of Counsel
                                 100 State Street
                                 Rochester, New York 14614
                                       and
                                 BENIL ABRAHAM,
                                 Special Assistant United States Attorney, of Counsel
                                 Social Security Administration
                                 Office of General Counsel
                                 26 Federal Plaza
                                 Room 3904
                                 New York, New York 10278
                                     and

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

RICHARD W. PRUETT,
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
1961 Stout Street
Suite 4169
Denver, Colorado  80294

**JURISDICTION**

On June 19, 2018, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 12, 2018 (Dkt. 10), and by Defendant on May 9, 2018 (Dkt. 12).

**BACKGROUND**

Plaintiff Jennifer Marie Maynard ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on February 24, 2014, for Social Security Disability Insurance under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges she became disabled on February 11, 2013, based on fibromyalgia, degenerative disc disease, bilateral hip bursitis, severe panic disorder, depression, nerve damage in her arms and legs, and post-traumatic stress disorder.  AR[2] at 51, 309, 313.  Plaintiff's applications initially were denied on June 9, 2014, AR at

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on November 27, 2017 (Dkt. 7).

116-47, and at Plaintiff's timely request, on August 11, 20, 2016, a hearing was held in Rochester, New York, by video conferencing before administrative law judge Michael Carr ("the ALJ"), located in Falls Church, Virginia. AR at 77-115. Appearing and testifying at the hearing were Plaintiff and her then attorney, Justin Goldstein, Esq. ("Goldstein"), and vocational expert ("VE") Thomas Hyman, who appeared by telephone. AR at 78-79.

On September 21, 2016, the ALJ issued a decision denying Plaintiff's claim, AR at 48-65 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council. AR at 279. With the consent of the Appeals Council, Plaintiff submitted additional medical records for the Appeals Council's consideration. AR at 8-42, 66-76. On May 19, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-7. In the decision, the Appeals Council acknowledged receipt of the additional medical evidence Plaintiff submitted, but did not consider the evidence either because it did not pertain to the relevant period of time, or failed to show a reasonable probability of changing the outcome of the decision. AR at 2. On January July 17, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On March 12, 2018, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum"). On May 9, 2018, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local

Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum"). Filed on June 1, 2018, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Jennifer Marie Maynard ("Plaintiff" or "Maynard"), born August 28, 1976, was 36 years old as of February 11, 2013, her alleged disability onset date ("DOD"), and 40 years old as of September 26, 2016, the date of the ALJ's decision. AR at 51, 53, 60, 108, 284, 309. Plaintiff attended regular classes in high school, from which she dropped out but attained a graduate equivalency diploma ("GED") in 1993, unsuccessfully attempted some on-line college courses, AR at 90-91, has not completed any specialized job training or vocational school, AR at 314, and has previously worked as an adult entertainer and bartender in a club. AR at 314. Plaintiff is not currently married but is once divorced and once widowed, AR at 284-85, has four children,[4] AR at 99, and lives with her father and her father's girlfriend. AR at 98, 325.

Throughout the period of time relevant to Plaintiff's disability benefits claim, Plaintiff received general medical care at Bloomfield Family Practice, P.C., in Victor, New York, where Plaintiff's primary care physician was Vincent M. Yavorek, M.D. (Dr.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.
[4] Although Plaintiff reported on her SSDI application that she has no children under age 18, AR at 285, the record otherwise establishes that at the time of the administrative hearing, Plaintiff had four children, including, with her first husband, an eighteen year-old child from whom Plaintiff is estranged, AR at 99, 11 and 13 year old sons with her second husband, who live with Plaintiff's sister-in-law, and who Plaintiff sees only occasionally, and another son, age five, who lived with Plaintiff half the week. AR at 99.

Yavorek"). For the same time period, Plaintiff received mental health treatment at Livingston County Mental Health Services ("LMHS"), in Geneseo, New York, where Plaintiff saw licensed mental health counselor ("LMHC") Jennifer Henderson ("LMHC Henderson"), from psychiatrist, Xingjia Cui, M.D. ("Dr. Cui"), and at Finger Lakes Area Counseling & Recovery Agency ("FLACRA") where Plaintiff was evaluated by Credentialed Alcoholism and Substance Abuse Counselor ("CASAC") Lindsey Kincaid. It is undisputed that Plaintiff suffers from low back pain, and reports a history of sexual abuse, custody battles over her children, and has a criminal record for grand larceny related to the use of her former in-laws' credit card.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

5

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

6

defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found that Plaintiff met the Act's insured status requirement for SSDI through December 31, 2014, AR at 53, Plaintiff has not engaged in substantial gainful activity since February 11, 2013,[6] her alleged disability onset date, AR at 53, Plaintiff suffers from the severe impairments of degenerative disc changes to cervical and lumbar spines, bipolar disorder, post-traumatic stress disorder ("PTSD"), and panic disorder, AR at 54, but that additional conditions, including opioid dependence, asthma, bursitis, and migraine headaches have no more than a minimum impact on Plaintiff's ability to perform basic work activities and, thus, are non-severe impairments. AR at 54. The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, AR at 54-55, and that Plaintiff retains the RFC to perform light work except that she can stand and/or walk for four hours in an 8-hour workday, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, cannot climb ladders, ropes, or scaffolds, is limited to performing unskilled work and making simple work-related decisions, and requires a work environment where change is minimal and only occasional contact with supervisors and coworkers, and no in-person contact with the general public. AR at 55-58. The ALJ further found Plaintiff unable to perform her PRW as a bartender/adult entertainer and amusement park entertainer but, given Plaintiff is a younger individual between the ages of 18 and 49 as of her alleged disability onset date, her education and ability to communicate in English, and RFC, and despite no transferable skills from her PRW, jobs exist in significant

---

[6] It is undisputed that although Plaintiff worked after February 11, 2013, her reported earnings from such work were below the monthly threshold for disability and, as such, "do not indicate substantial gainful activity." AR at 53.

8

numbers in the national economy that Plaintiff can perform, including document preparer – microfilming (updated technology), final assembler (optical goods), and touch-up screener, printed circuit board assembly, AR at 58-59, such that Plaintiff is not disabled as defined under the Act. *Id.* at 59.

In support of her motion, Plaintiff argues the ALJ erred by failing to apply the treating physician rule, Plaintiff's Memorandum at 14-17, granting limited weight to a consulting opinion supporting moderate to severe physical RFC relying, instead, on the ALJ's own lay judgment, *id.* at 17-19, and with regard to Plaintiff's mental RFC, failing to adequately explain the little weight given to Dr. Lin's opinion in contrast to the great weight given the state agency consultant's opinion. *Id.* at 19-21. Defendant argues the ALJ reasonably weighed the medical opinions regarding both Plaintiff's physical limitations, Defendant's Memorandum at 19-24, and Plaintiff's mental limitations, *id.* at 24-25. In reply, Plaintiff characterizes Defendant's arguments against Plaintiff's disability benefits claim as consisting of "*post hoc* rationalizations" in support of the ALJ's decision. Plaintiff's Reply at 1-4. There is no merit to Plaintiff's arguments.

**Treating Physician Rule**

Generally, the opinion of a treating physician is entitled to significant weight, but is not outcome determinative and only entitled to significant weight when "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed.Appx. 34, 35 (2d Cir. Dec. 1, 2017) (*quoting Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), and 20 C.F.R. § 404.1527(d)(2)). Where, however, the ALJ discounts a treating physician's opinion, the ALJ must set forth "good

9

reasons" for doing so.  *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  Here, substantial evidence in the record establishes the ALJ did not violate the treating physician rule.

### 1. Dr. Yavorek and Dr. Toor

In connection with Plaintiff's disability benefits claim, Dr. Yavorek, as Plaintiff's treating physician, rendered medical opinions as to Plaintiff's physical RFC on April 28, 2015, AR at 571-72 ("first RFC opinion"), and on May 23, 2016, AR at 700-04 (repeated at AR at 706-10) ("second RFC opinion").  Plaintiff argues the ALJ decision to give little weight to both of Dr. Yavorek's opinions was error because the ALJ failed to acknowledge the opinions are from Plaintiff's treating physician, and the ALJ failed to provide good reasons for rejecting the opinions that are well-supported by the record.  Plaintiff's Memorandum at 14-17.  In opposition, Defendant maintains the ALJ provided sufficient reasons for discounting Dr. Yavorek's opinions, which are not supported by the medical evidence in the record.  Defendant's Memorandum at 19-24.

Dr. Yavorek's first RFC opinion is comprised of a "Medical Examination for Employability" "checkbox-type form" prepared by the Ontario County Department of Social Services on which Dr. Yavorek lists Plaintiff's medical conditions from which Plaintiff has suffered for the past five to ten years as depression, anxiety, PTSD, fibromyalgia, and migraine headaches, indicating the expected duration of each of these conditions is permanent.  AR at 571.  According to Dr. Yavorek, Plaintiff's medical conditions rendered Plaintiff's physical RFC severely limited in walking, standing, sitting, lifting/carrying, push/pulling, bending/squatting, using her hands, and climbing stairs for only one to two hours in an 8-hour workday, although Plaintiff was unlimited in seeing,

hearing, speaking, and using public transportation. AR at 572. Dr. Yavorek opined Plaintiff's mental RFC was severely limited as to her ability to understand and remember complex instructions, maintain attention and concentration, and interact appropriately with others, somewhat limited in her ability to understand and remember simple instructions, maintain socially appropriate behavior, make simple decisions, and perform simple tasks, and unlimited as to maintaining basic standards of personal hygiene and grooming, and using public transportation. AR at 572. Dr. Yavorek further opined Plaintiff was unable physically or mentally to maintain employment, or to participate in classroom type activities. AR at 572. In his second RFC opinion, Dr. Yavorek completed a Physical and Mental Health Source Statement dated May 23, 2016,[7] including as Plaintiff's physical and mental impairments lower back pain, depression, PTSD, degenerative disc disease, anxiety, and fibromyalgia. AR at 706. According to Dr. Yavorek, Plaintiff was markedly limited by these conditions in that she was precluded from performing 15 of 21 separately enumerated work activities for more than 30% of a regular workday, and with regard to the remaining six work activities, was precluded from performing two of them for more than 20% of the workday, and from performing four of them for 11% to 20% of the workday, assessing Plaintiff can sit or stand for 15 minutes at one time and less than two hours in an 8-hour workday, rarely lift or carry and even then less than 10 lbs., expected Plaintiff to have "good days" and "bad days," and that Plaintiff likely would be absent from work more than four days per week. AR at 707-09. The ALJ accorded "little weight" to both Dr. Yavorek's first and second RFC opinions because they are largely "checklist forms" providing little

---

[7] Both copies of the second RFC opinion are very difficult to read with some parts illegible.

explanation or rationale for the findings expressed therein. AR at 57-58. The ALJ is correct.

Relevantly, Plaintiff was first examined by Dr. Yavorek on April 28, 2015, when Plaintiff presented Dr. Yavorek with disability paperwork to complete. AR at 610-18. Upon examination, Plaintiff was able to sit and stand and required no assistance getting onto the exam table, exhibited "fairly good" range of motion ("ROM") of her neck, with some cervical-spine tenderness to palpation, but on the motor and neuro exam, Plaintiff was "barely able" to lift her arms, flex or extend her legs with active range of motion, minimal grip strength, and claimed pain with light touch. AR at 611. Dr. Yavorek noted Plaintiff showed "questionable cooperation with the motor and neuro exam," AR at 611, commenting that most of the medical issues Plaintiff expressed "are subjective" and without any evidence of objective findings, indicating Plaintiff's first RFC opinion was based on Plaintiff's self-reported complaints. AR at 617. At subsequent medical appointments with Dr. Yavorek, although Plaintiff's reported medical problems included fibromyalgia, migraines, and degenerative disc disease with chronic back pain, Plaintiff did not complain of back and hip pain, migraines or fibromyalgia. In particular, on June 16, 2015, Plaintiff sought treatment for anxiety after she had a "falling out" with her psychiatrist Dr. Cui, who terminated Plaintiff's treatment after requesting a urine drug screen which Plaintiff, who has a history of pain-killer addiction, did not wish to take. AR at 619-21. Dr. Yavorek referred Plaintiff for further psychiatric care to Canandaigua Lake Counseling Services and reminded Plaintiff of his practice's policy not to prescribe long-term controlled substances. AR at 619, 621. At further appointments, Plaintiff was treated for ailments other than those for which Plaintiff seeks disability, including, *inter*

*alia*, an ear infection, AR at 622-24 (July 15, 2015), an upper respiratory infection, AR at 625-27 (October 2, 2015), and hives, AR 634-36 (December 1, 2015), and, most recently, "generalized pain" for which Plaintiff requested a cane, but none was prescribed, with Dr. Yavorek commenting that there were "overall no changes" to Plaintiff's condition. AR at 784-86 (April 19, 2016). Simply put, these records, based on Dr. Yavorek's contemporaneous observations of Plaintiff, do not support Dr. Yavorek's opinion, largely expressed in "checkbox" form, that Plaintiff is disabled.

On May 6, 2014, Plaintiff, in connection with her disability benefits application, underwent a consultative examination by consultative physician and internist Harbinder Toor, M.D. ("Dr. Toor"), who opined Plaintiff was moderately to severely limited for standing, walking, squatting, bending, and lifting, moderately limited to sitting for a long time, pushing, pulling, reaching, or twisting with her cervical spine, pain interfered with Plaintiff's physical routine, and Plaintiff need to be careful about heights and operating machinery because of a seizure history, and should avoid irritants of other factors that can precipitate asthma. AR at 518-21. The ALJ gave this opinion "some weight," finding the opinion "on the whole too extreme" because all diagnoses in the opinion are by "history" only. AR at 58. A plain reading of Dr. Toor's opinion establishes that, as the ALJ found, the diagnoses contained therein, including, *inter alia*, for fibromyalgia, bilateral hip bursitis, degenerative disc disease in her lower back, disc problem in her cervical spine, seizures and asthma, are all by way of Plaintiff's history, and not based on any medical testing or diagnosis that occurred that day, AR at 521, Plaintiff's gait was normal and she walked without any assistive device. AR at 519. Accordingly, consideration of Dr. Toor's opinion, in light of the medical evidence in the record,

13

warranted being discounted by the ALJ.  *See* 20 C.F.R. § 404.1545(a)(3) (explaining an ALJ considers "all of the relevant medical and other evidence," including relevant medical reports, consultative examinations, medical history, and statements from medical sources, family, friends, or other persons where assessing a claimant's RFC).

Significantly, medical examinations by Leonid Vilensky, M.D. ("Dr. Vilensky"), who Plaintiff saw for pain management during the relevant time were also inconsistent with the opinions of both Dr. Yavorek and Dr. Toor.  Specifically, although Dr. Vilensky repeatedly found Plaintiff with osteoarthritis for which Plaintiff's symptoms were tenderness and decreased ROM in her lower back and hips, and walking with a slow and guarded gait, Dr. Vilensky also repeatedly found Plaintiff reported pain relief, often 70% to 80%, with conservative treatment including medication and steroid injections. *See* AR at 659-63 (August 19, 2015); 664-67 (September 24, 2015); 668-71 (October 27, 2015); 672-75 (November 25, 2015); 676-79 (December 22, 2015); 680-63 (January 21, 2016); 684-87 (January 26, 2016); 688-91 (February 18, 2016); 692-96 (March 17, 2016); 750-54 (April 19, 2016); 755-58 (May 17, 2016); 761-64 (June 10, 2016); 765-68 (July 13, 2016).  Significantly, on January 21, 2016, Plaintiff complained of increased pain in the lumbar and thoracic spines and requested adding Tramadol (opioid pain medication), to her medications which already included Buprenorphine (opioid pain medication), but Dr. Vilensky commented Plaintiff's MRI results showed only minimal degree of small disc bulging, posterior element degeneration, and facet joint degeneration, and declined to add Tramadol, recommending instead a medial branch block (anti-inflammatory steroid injection) in the lumbar spine at Plaintiff's next

appointment. AR at 682-83. Dr. Vilensky's medical reports thus do not support the opinions of either Dr. Yavorek or Dr. Toor.

Regardless of the medical opinions in the record, whether a disability benefits claimant is disabled is an issue expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3) (reserving to the Commissioner the determination whether a claimant meets the statutory definition of disability); *Wright v. Berryhill*, 687 Fed.Appx. 45, 48 (2d Cir. Apr. 14, 2017) ("the legal determination of whether an individual is eligible to receive disability insurance benefits is reserved to the Commissioner." (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999))).

Nor does the prohibition against the ALJ substituting his own medical judgment for that of expert medical opinions require the ALJ's RFC assessment precisely track any medical source opinion; rather, the ALJ "was permitted to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. Jan. 25, 2013). Here, the ALJ's assessment of Plaintiff's RFC is supported by the treatment and progress notes of Drs. Yavorek and Vilensky who, as discussed, repeatedly found Plaintiff with some medical impairments which responded to conservative treatment which included pain medication and steroid injections. Accordingly, in light of the plethora of evidence in the record that fails to support that Plaintiff is as limited as Dr. Yavorek or Dr. Toor opined, the ALJ did not commit any error in giving little weight to the opinions of Dr. Yavorek, or only "some weight" to the opinion of Dr. Toor that Plaintiff is unable to work, and Plaintiff's motion is, on this argument, DENIED.

### 2. Dr. Lin

With regard to Plaintiff's mental restrictions, Plaintiff maintains the ALJ erred in giving great weight to the opinion of state agency psychologist S. Bhutwala, Ph.D. ("Dr. Bhutwala"), yet failing to adequately explain the weight given to the consultative opinion of psychologist Yu-Ying Lin, Ph.D. ("Dr. Lin"). Plaintiff's Memorandum at 19-21. Defendant maintains the ALJ reasonably found Dr. Lin's assessment of Plaintiff's mental restrictions not supported by Plaintiff's treatment records which did support Dr. Bhutwala's assessment of Plaintiff's mental restrictions. Defendant's Memorandum at 24-25. Plaintiff's argument is without merit.

Preliminarily, neither Dr. Bhutwala nor Dr. Lin had a treating relationship with Plaintiff, but only consultatively examined Plaintiff with regard to her disability benefits application, including on May 6, 2014 (Dr. Lin), AR at 523-28, and on June 9, 2014 (Dr. Bhutwala), AR at 140-42. Dr. Lin found Plaintiff to be mildly impaired by anxiety with regard to maintaining attention and concentration, moderately impaired as to recent and remote memory skills, intellectual functioning was below average with general fund of information appropriate to experience, insight was fair, and judgment was fair to poor, AR at 526, and Dr. Lin opined Plaintiff's mental RFC permitted her to follow and understand simple directions and instructions, perform simple tasks independently and complex tasks with supervision, learn new tasks, relate adequately with others, but is markedly limited as to maintaining a regular schedule, and appropriately dealing with stress, although such difficulties are caused by stress related problems and a lack of motivation. AR at 527. In contrast, Dr. Bhutwala found lesser restrictions with Plaintiff not significantly limited in remembering locations and work-like procedures,

understanding, remembering, and carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, asking simple questions or requesting assistance, being aware of normal hazards and taking appropriate precautions, and setting realistic goals or making plans independently of others, and moderately restricted in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, working in coordination with or in proximity to others without being distracted by them, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, and traveling in unfamiliar places or using public transportation, but not markedly restricted in any work-related mental abilities.  AR at 140-42.  The ALJ's determination that Dr. Lin's mental RFC assessment, based on the single examination, was not supported by Plaintiff's out-patient mental health records, AR at 58, with which Dr. Bhutwala's mental RFC assessment was consistent, AR at 58, is supported by substantial evidence in the record.

Relevantly, from October 19, 2012 through December 31, 2013, Plaintiff received counseling from LMHC Henderson who, on October 22, 2012 assessed depressive disorder not otherwise specified ("NOS"), anxiety disorder NOS, for which the prognosis was fair to good. AR at 540-43. On July 16, 2013, LMHC Henderson saw Plaintiff at a screening at the Livingston County Jail where Plaintiff was incarcerated following her April 2012 conviction for grand larceny. AR at 544. LMHC Henderson commented Plaintiff's earlier intake appointment was Plaintiff's "effort to satisfy probation" but that Plaintiff did not return. AR at 545. LMHC Henderson diagnosed depressive disorder NOS and anxiety disorder NOS, AR at 545, Plaintiff was alert, had anxious mood with intense affect, fidgety, with normal recent and remote memory, open and cooperative, showed partial awareness of her problems, but had poor judgment and concentration. AR at 547. Plaintiff last received treatment from LCMH on November 28, 2013, when Plaintiff was released from the Livingston County Jail, stating she intended to get further drug and mental health treatment, and was reported to have made progress dealing with her self, improving esteem, and making positive plans for her future including regaining custody of her children. AR at 549. From August 15, 2014 through October 1, 2014, Plaintiff received substance abuse counseling from CASAC Kincaid at FLACRA, where Plaintiff was assessed with opioid dependence and bipolar disorder, NOS, and outpatient substance abuse treatment was deemed appropriate. AR at 551-69. During her treatment, Plaintiff had all negative drug screens, met all treatment goals, and was discharged "in maintenance stage of recovery," *id.* at 551, and Plaintiff's treatment records do not indicate Plaintiff has any impediments to working. From May 23, 2014 through May 8, 2015, Plaintiff received mental health treatment from Dr. Cui

18

who repeatedly assessed bipolar disorder, most recent episode depressed, and opioid type dependence, yet also found Plaintiff with good hygiene and grooming, cooperative with good eye contact, good mood, affect is mood congruent, linear thought process, unremarkable thought content, alert and oriented in all three spheres (time, place and person), with fine insight and judgment, and without salient delusions.  AR at 712-46.  Dr. Cui's May 8, 2015 treatment notes indicate that Plaintiff was supposed to go for a urine toxicity screen on April 10, 2015, but went on April 30, 2015, which was considered in violation of her contract and Plaintiff's treatment was thus terminated.  AR at 714.  Further, although Dr. Yavorek, in his first RFC opinion, assessed Plaintiff as moderately or severely limited in six of eight separately enumerated mental abilities and that Plaintiff is not mentally able to maintain employment, AR at 572, Dr. Yavorek also pointedly reminded Plaintiff on June 16, 2015, that he "would not take care of her psychiatric issues or prescribe her psychiatric medications," AR at 619, and because Plaintiff's treatment with Dr. Cui was terminated, Dr. Yavorek provided Plaintiff with a referral to Canandaigua Lake Counseling Services ("CLCS").  AR at 621.  Subsequent Psych Progress Notes from CLCS show Plaintiff received psychiatric health treatment from July 21, 2015 through December 9, 2015, and was diagnosed with generalized anxiety disorder, borderline personality disorder, rule out PTSD, AR at 771-82, and on her last visit, the "psych impression" included that Plaintiff had not been forthcoming with her addiction history, including that her "polypharmacy" included "multiple controlled substances that when combined together can provide a powerful high," that Plaintiff has "a long history or missing appointments" with regard to therapy, and missed

14 appointments in the previous three months. AR at 782. Significantly, the CLCS records do not contain any assessment of Plaintiff's mental abilities to perform work.

Accordingly, the ALJ's assessment of Plaintiff's mental RFC as limited to performing unskilled work, making only simple work-related decisions, requiring a work environment with minimal changes, and only occasional contact with supervisors and coworkers and no in-person contact with the general public, AR at 55, is supported by substantial evidence in the record, including Dr. Bhutwala's opinion, as well as the other mental health evidence in the record. Plaintiff's motion is, on this ground, DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED. The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 26th, 2019
Buffalo, New York